OPINION
{¶ 1} Defendant, Anthony Pinson, appeals from his conviction and sentence for possession of crack cocaine, which were entered on Pinson's plea of no contest after the trial court overruled his Crim.R. 12(C)(3) motion to suppress evidence. Pinson challenges that holding in this appeal.
 {¶ 2} The evidence adduced at the hearing on Pinson's motion to suppress shows that on June 9, 2004, within the hour after 12:00 noon, Dayton Police Officer John Beall went to the residence at 37 North Kilmer Street in search of Lenora Hill, who had eluded him on the street outside a short time before, after Officer Beall discovered an outstanding warrant for her arrest.
 {¶ 3} Officer Beall testified that when he walked to the front door of the residence he discovered that it was standing open about six to twelve inches and that he could smell a strong odor of burning marijuana coming from inside. When Officer Beall knocked on the door, his knock was answered by Vickie Pinson, mother of both Lenora Hill and Defendant Anthony Pinson. When she did, Officer Beall was able to see inside, and there saw Anthony Pinson standing in the doorway between the kitchen and the dining room.
 {¶ 4} Officer Beall was familiar with Defendant and knew of three outstanding warrants for his arrest. Acting on his duty and authority to enforce those warrants, and though Vickie Pinson told him he could not enter, Officer Beall entered the residence and arrested Defendant Pinson. Several other people who were inside fled, two of them by jumping out a window.
 {¶ 5} In the immediate vicinity where Defendant stood, Officer Beall saw three firearms and a variety of illegal drugs in plain view. Defendant was arrested and secured in a cruiser. Officer Beall and other officers then returned and seized the guns and drugs, including a box of crack cocaine which was later determined to bear Defendant's fingerprints. The cocaine formed the basis of the criminal offense with which Defendant was charged and to which, after companion charges were dismissed, he entered his plea of no contest.
 FIRST ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT ERRED TO THE EXTENT THAT IT DETERMINED THAT APPELLANT LACKED `STANDING' TO CHALLENGE THE SEARCH."
 {¶ 7} The tenant at 37 North Kilmer Street was Deonna Battle, who was in the process of moving in. Neither Vickie Pinson, who answered the door, nor her daughter, Lenora Hill, lived there. Neither did Defendant Anthony Pinson reside there, though evidence was introduced, which was undisputed, that he had stayed there for two nights prior to his arrest as a guest of Deonna Battle while helping her move in.
 {¶ 8} An individual must have standing to challenge the legality of a search or seizure. Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421;State v. Coleman (1989), 45 Ohio St.3d 298. The person challenging the search bears the burden of proving standing. State v. Williams,73 Ohio St.3d 153, 1995-Ohio-275. That burden is met by establishing that the person has a expectation of privacy in the place searched that society is prepared to recognize as reasonable. Id.; Rakas v. Illinois,supra. Property ownership is only one factor to be considered. U.S. v.Salvucci (1980), 448 U.S. 83, 100 S.Ct. 2547.
 {¶ 9} Overnight guests have a reasonable expectation of privacy in the home in which they are staying. Minnesota v. Olson (1990), 495 U.S. 91,110 S.Ct. 1684. On the other hand, a person who is merely present in a home with the consent of the owner may not be able to claim the protection of the Fourth Amendment. Minnesota v. Carter (1998), 525 U.S. 83,119 S.Ct. 469.
 {¶ 10} The State argued at the hearing on Defendant's motion that he is not entitled to an order suppressing the evidence of guns and drugs police found at 37 North Kilmer Street because he did not live there. The trial court did not expressly adopt that argument, but it implicitly found that no reasonable expectation of privacy Defendant may have had was violated when the court observed that Defendant had no say about who came into the house, that the new tenant, Deonna Battle, was not present at the time, and that Defendant's mother, Vickie Pinson, was not shown to have had any lawful authority to deny officer Beall admission.
 {¶ 11} The State, relying on State v. Williams, argues that Defendant had no reasonable expectation of privacy because he
 {¶ 12} resided elsewhere at the time. However, in Williams there was no evidence that the defendant was an overnight guest to whom Fourth Amendment protections are extended per Minnesota v. Olsen.
 {¶ 13} Deonna Battle's uncontroverted testimony was that she had rented the house at 37 N. Kilmer Street just three days prior to this incident, that she was still in the process of moving in, that Defendant was helping Ms. Battle move in, and that Defendant had been an overnight guest in the home for the two nights immediately preceding this search. While the credibility of the witnesses is a matter for the trial court to decide in a hearing on a motion to suppress evidence, State v.Retherford (1994), 93 Ohio App.3d 586, there is no contrary testimony on this point, and the trial court did not indicate that it found Ms. Battle's testimony not credible.
 {¶ 14} Defendant's status as an overnight guest is sufficient to demonstrate an expectation of privacy in the premises which society is prepared to recognize as reasonable. Olson, supra. To the extent the trial court implicitly found that Defendant lacked standing to challenge the search and seizure in this case, it erred.
 {¶ 15} Defendant's first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR {¶ 16} "THE TRIAL COURT'S DECISION SHOULD BE REVERSED BECAUSE A POLICE OFFICER MAY NOT ENTER A HOUSE PURSUANT TO AN ARREST WARRANT ABSENT EXIGENT CIRCUMSTANCES WHEN THE HOUSE BELONGS TO SOMEONE OTHER THAN THE PERSON FOR WHOM THE WARRANT HAS BEEN ISSUED."
 {¶ 17} A warrantless, non-consensual entry by police into a private home is presumptively unreasonable. Payton v. New York (1980),445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 2d 639. Moreover, warrantless searches are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions.Katz, v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The State bears the burden of establishing the validity of a warrantless search. State v. Kessler (1978), 53 Ohio St.2d 204.
 {¶ 18} The existence of exigent circumstances is a well-recognized exception to the Fourth Amendment's warrant requirement, Welsh v.Wisconsin (1984), 466 U.S. 740, 104 S. Ct. 2091, 80 L.Ed.3d 732; State v.Akron Airport Post No. 8975 (1975), 19 Ohio St.3d 49, and generally implies an emergency that requires immediate action because a person inside the home is in need of immediate aid, or to prevent a situation threatening life or limb, or the immediately loss, removal or destruction of evidence or contraband. Mincey v. Arizona (1978), 437 U.S. 395,98 S.Ct. 2408, 57 L.Ed.2d 290. Police bear a heavy burden when attempting to demonstrate an urgent need that justifies warrantless searches or arrests. Welsh v. Wisconsin, supra.
 {¶ 19} In Steagald v. United States (1981), 451 U.S. 204, 101 S.Ct. 1642,68 L.Ed.2d 38, police armed with an arrest warrant entered a residence in an effort to find and arrest the subject of the warrant. They didn't find him, but did discover illegal drugs, and the homeowner was subsequently charged with related drug offenses. The Supreme Court held that though the authority the arrest warrant conferred authorized police to enter the residence to find the person named in the warrant, it did not authorize the search that was performed. To the extent that the search yielded contraband used to charge the homeowner with a criminal offense, the search and the seizure were warrantless violations of the homeowner's reasonable expectations of privacy and his Fourth Amendment rights, for which the warrant to arrest another person provided no exigent circumstances exception to the Fourth Amendment warrant requirement.
 {¶ 20} Steagald rejected use of the arrest warrant, which was valid, as an exigent circumstance justifying the warrantless search of the premises that produced contraband forming the basis of criminal charges against the homeowner. No exigent circumstance inquiry need be made here, however. The warrants for Defendant's arrest authorized police to enter a dwelling in which they had probable cause to believe him to be, as they clearly did here, in order to arrest him. Even though Defendant had a reasonable expectation of privacy in the premises because he was an overnight guest, Minnesota v. Olsen, that expectation does not overcome the authority conferred on the officers by the arrest warrant. It would not have protected him from arrest in his own home, and "[a] person has no greater right of privacy in another's home than in his own." UnitedStates v. Underwood (CA9 1983), 717 F.2d 482, 484. Because Defendant was subject to arrest at any time on the outstanding warrants, he had no reasonable expectation of privacy, anywhere, that protected him from execution of the warrants, and thus no legal foundation for his Fourth Amendment claim that police entered the house illegally to arrest him.Dayton v. Click (Oct. 5, 1994), Montgomery App. No. 14382.
 {¶ 21} Defendant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 22} "EVEN IF THERE WERE EXIGENT CIRCUMSTANCES JUSTIFYING THE INITIAL ENTRY, THE EVIDENCE SHOULD STILL HAVE BEEN ORDERED SUPPRESSED BECAUSE THE OFFICERS RETURNED TO THE HOUSE AFTER APPELLANT WAS ARRESTED AND CONDUCTED A WARRANTLESS SEARCH."
 {¶ 23} Defendant argues that even if the entry by police into the home at 37 North Kilmer to arrest him on outstanding warrants was lawful based upon exigent circumstances, the warrantless seizure of drugs discovered in that home, which did not occur until after Defendant was secured in a police cruiser and police had re-entered the home, was unlawful because by that time the exigency no longer existed. Michigan v. Tyler (1978),436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486.
 {¶ 24} We agree that Defendant's arrest on three outstanding warrants provided no exigent circumstances justifying the search that was performed after he was removed from the house. The State argued, however, and the trial court found, that the guns and drugs officers seized should not be suppressed because they were in plain view, presumably when Defendant was arrested.
 {¶ 25} Pursuant to the plain view doctrine, which is a well-established exception to the Fourth Amendment's warrant requirement, Akron Airport Post, a police officer may seize evidence if the incriminating nature of that evidence is immediately apparent to the officer and the officer discovers that evidence during the course of a lawful intrusion. Coolidge v. New Hampshire (1971), 403 U.S. 443,91 S.Ct. 2022. 29 L.Ed.2d 112. Moreover, police may utilize their special knowledge and experience to justify their belief that probable cause exists to believe that the article seen in plain view is, in fact, incriminating evidence or contraband. State v. Willoughby (1992),81 Ohio App.3d 562.
 {¶ 26} Officer Beall testified that he "observed three loaded handguns" (T. 22) when he arrested Defendant, "and then I hear some crashing in the other room, so I was kind of worried about my safety . . ." (T. 23). Defendant was taken outside, and after more officers arrived they reentered the house and searched the entire house for evidence, even upstairs. (T. 24, 26). The record suggests that the house had by then been cleared of other persons. The kitchen was searched. (T. 24). A small bag of marijuana was on the counter. (T. 25). Cocaine was found under the counter, "[i]n one of the cabinets . . ." (T. 25). It appears that a fingerprint of Defendant's found on the box (T. 10) connected him to its contents and forms the basis of the charge of possession of crack cocaine.
 {¶ 27} The record does not indicate whether the door of the cabinet in which the box containing cocaine was found was closed or open, or if open how visible the box was, and if it was visible what supported a belief that the box likely contained drugs. Those matters all relate to the plain view exception the court found. Because it was the State's burden to prove the plain view exception, doubts in those respects cannot weigh in favor of the finding the court made.
 {¶ 28} The fact that drugs were seen in plain view may create a belief that it is likely more drugs are on the premises, but that does not justify a warrantless search of a house to locate them. Agnello v. UnitedStates (1925), 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. Such a warrantless search might be justified in exceptional circumstances, as when evidence or contraband is threatened with removal or destruction. Johnson v.United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. However, when officers have satisfied themselves that no one else is on the premises, that justification does not exist. Vale v. Louisiana (1970),399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. Neither is such a warrantless search justified on the possibility that the defendant's family might dispose of evidence. United States v. Davis (5th Cir., 1970), 423 F.2d 974.
 {¶ 29} The potential exceptions to the Johnson/Vale/Davis rule were explained in United States v. Rubin (3rd Cir., 1973), 474 F.2d 262, wherein the court held, at 268:
 {¶ 30} "When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, * * *; (2) reasonable belief that the contraband is about to be removed * * *; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought * * *; (4) information indicating the possessors of the contraband are aware that the police are on their trail * * *; and (5) the ready destructibility of the contraband and the knowledge `that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.'"
 {¶ 31} If the cocaine that forms the basis of the charge against Defendant was not in plain view and its incriminating nature immediately apparent to the officers who saw it when Defendant was arrested, one or more of the circumstantial factors outlined in Rubin must be shown to justify the warrantless general search of the premises that yielded the cocaine. The case will be remanded to the trial court for those determinations.
 {¶ 32} The third assignment of error is sustained.
 Conclusion {¶ 33} Having sustained the first and third assignments of error, we will reverse Defendant's conviction and remand the case to the trial court for further proceedings consistent with this opinion.
Wolff, J. And Donovan, J., concur.