[Cite as *State v. Winston*, 2012-Ohio-4743.]

### IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24973 |
| vs. | : | T.C. CASE NO. 2010-CR-3022 |
| JAMES A. WINSTON | : | (Appeal from Common Pleas Court - Criminal Division) |
| Defendant-Appellant | : | |

· · · · · · · · ·

**O P I N I O N**

Rendered on the 12th day of October, 2012.

· · · · · · · · ·

Mathias H. Heck, Jr., Prosecuting Attorney, by Michele D. Phipps, Assistant Prosecuting Attorney, Atty. Reg. No. 0069829, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

Adelina E. Hamilton, Atty. Reg. No. 0078595, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

· · · · · · · · ·

GRADY, P.J.:

{¶ 1} Defendant James Winston appeals from his convictions and sentence for having weapons under disability, possession of crack cocaine, possession of cocaine, and possession of marijuana, which were entered upon his plea of no contest made following the trial court's denial of his motion to suppress.

**{¶ 2}** On September 20, 2010, the Dayton Metropolitan Housing Authority (DMHA) Police Task Force received an e-mail from James Goodwill, the director of security for DMHA. Goodwill advised the task force that there was drug activity at 45 Benning Place. The following day, Dayton Police Officers Coleman and Barnes and Sergeant Abney went to the apartment to perform a knock-and-advise.

**{¶ 3}** Officer Coleman went to the back door, while Officer Barnes and Sgt. Abney knocked at the front door. A male voice asked who was there, and the officers identified themselves as police. Upon hearing this identification, Diamond McKnight tried to run out the back door. Officer Coleman stopped her and ordered her to return to the apartment. When McKnight had opened the back door, Officer Coleman noticed a strong smell of burnt marijuana coming from inside the apartment. He radioed the other officers and then stepped across the threshold of the residence.

**{¶ 4}** Once inside, Officer Coleman saw marijuana on a coffee table. In the meantime, Officer Barnes had come to the back door and followed Officer Coleman inside. In addition to McKnight the officers saw Defendant, and both were ordered to sit on the couch. Officer Coleman opened the front door to allow Sgt. Abney to enter. For officer safety, Sgt. Abney looked inside a large closet near the front door for other occupants, and he saw a handgun and a baggie of marijuana.

**{¶ 5}** Continuing a protective sweep for officer safety, Officer Barnes found the apartment's tenant, Winston's girlfriend Laquita Phillips, upstairs with two children. Phillips denied any knowledge of the gun or the marijuana. By that time, Sgt. Blommel had also arrived at the apartment. Sgt. Blommel heard Phillips give Sgt. Abney verbal consent to search her apartment. During the search, Sgt. Abney found a second gun in the front closet. The officers also found cocaine, crack cocaine, and more marijuana in unspecified locations throughout the apartment. The guns and drugs were seized by police.

**{¶ 6}** Officer Coleman read Defendant his rights. Defendant waived his rights and agreed to talk to the police. No evidence was offered at the suppression hearing regarding any specific statements made by Defendant to any of the officers.

**{¶ 7}** Defendant was indicted on one count each of having weapons under disability, R.C. 2923.13(A)(2), a felony of the third degree; possession of crack cocaine, R.C. 2925.11(A), a felony of the third degree; possession of cocaine, R.C. 2925.11(A), a felony of the fifth degree; and possession of marijuana, R.C. 2925.11(A), a minor misdemeanor. The weapons under disability charge arose from Defendant's juvenile adjudication of delinquency for gross sexual imposition.

**{¶ 8}** Defendant filed a motion to suppress the evidence police seized. At the hearing on his motion, Phillips testified that although DMHA policy did not allow Defendant to live with her, he did stay with her on occasion. She claimed that Defendant kept some of his belongings in her apartment and that he had spent the previous night or two with her. She denied giving the police permission to search her apartment. The trial court overruled Defendant's motion, finding that as he was neither a resident nor an overnight guest in the residence, Defendant had no reasonable expectation of privacy in the residence and therefore lacked standing to challenge the search and seizure.

**{¶ 9}** Defendant pled no contest to all four counts, and in exchange for the plea, the State agreed to community control. After the completion of a pre-sentence investigation report, the trial court sentenced Defendant to community control. Defendant appeals, raising two assignments of error challenging the trial court's denial of his motion to suppress.

**{¶ 10}** Defendant's first assignment of error:

"THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS DUE TO LACK OF STANDING BECAUSE DEFENDANT-APPELLANT WAS AN OVERNIGHT GUEST."

{¶ 11} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id.*

{¶ 12} The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures by the government. *State v. Kinney,* 83 Ohio St.3d 85,87, 698 N.E.2d 49 (1998); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, in order to have standing to challenge an alleged violation, a defendant must have a legitimate expectation of privacy in the place searched. *Minnesota v. Olson,* 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)*; Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct.421, 58 L.Ed.2d 387 (1978). A defendant's subjective expectation of privacy is "legitimate" only if it is "one that society is prepared to recognize as reasonable." *Rakas,* at 143-144. A defendant's status as an overnight guest at the time of the search is sufficient to show that he had a reasonable expectation of privacy in his host's home. *State v. Davis,* 80 Ohio App.3d 277, 285, 609 N.E.2d 174, citing *Olson,* at 96-97.

{¶ 13} The tenant, Defendant's girlfriend Laquita Phillips, testified with regard to Defendant's claim that he was an overnight guest at the residence at the time of the search. Phillips testified on cross-examination as follows:

Q. When this occurred back on September 21st of 2010, was [Defendant] living with you?

A. He would stay with me occasionally.

* * *

Q. But did he have clothes in your apartment?

A. Yes.

Q. Was [Defendant] allowed to stay there?

A. No.

Q. No, not under DMHA policy he was not allowed to live there, was he?

A. Right.   (Tr. 80-81).

* * *

Q. But, again, this individual (indicating) wasn't supposed to be living there and he was only staying there occasionally; correct?

A. Yes.

Q. Okay.   The clothing that was found in the house and all over, whose clothing did that belong to?

A. My clothing was in there.   My child's clothing was in there and he had some clothes in there.   (Tr. 82).

* * *

Q. And you're the only one that's supposed to be living there.

A. Yes.

Q. And that Mr. Winston, the defendant here, did not live in that apartment.

A. Correct.

Q. He only stayed occasionally.

A. Correct.

Q. Had he spent the night the night before?

A. Yes.

Q. How many nights had he been spending the night there?

A. He was there probably two nights prior, maybe.   (Tr. 83).

{¶ 14}  On re-direct, defense counsel emphasized Phillips's testimony that Defendant had been an overnight guest in her apartment.   That testimony is as follows:

Q. In this time frame that we're talking about - - the 21st of September - - had Mr. Winston been spending nights with you that he'd been staying at the apartment?

A. Yes.

Q. He had some belongings at the apartment?

A. Yes.   (Tr. 86).

{¶ 15}  Despite Phillips's testimony, the trial court concluded not only that Defendant was not a resident of the apartment, but also that "no evidence was adduced that Defendant was, at that time, a house guest at the premises.   To the contrary, evidence was elicited that Defendant and other non-tenants were allowed neither to reside nor be a guest either temporarily or permanently."

{¶ 16}  The State insists that in so holding the trial court implicitly found Phillips's testimony to not be credible.   However, nothing in the transcript of the suppression hearing indicates that the trial court found that Phillips's testimony was not credible.   While the credibility of the witnesses is a matter for the trial court to decide at a hearing on a motion to suppress, *State v. Retherford,* 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994), there was no contrary testimony offered on this point, and the trial court did not indicate that it found Phillips's testimony not credible.   Accordingly, we conclude that Phillips's undisputed testimony was sufficient to establish that Defendant was an overnight guest in her home.

{¶ 17}  Moreover, Defendant's status as an overnight guest is sufficient to demonstrate an expectation of privacy in the apartment that society is prepared to recognize as reasonable.  *State v. Pinson,* 2d Dist. Montgomery No. 20927, 2005-Ohio-4532, (uncontroverted testimony that defendant stayed overnight for two nights before search established status as overnight guest); *State v. Peterson,*

166 Ohio App.3d 112, 2006-Ohio-1857, 849 N.E.2d 104 (2d Dist.), at ¶ 13-15 (uncontroverted testimony that defendant stayed overnight for three nights before search established status as overnight guest). Accord, *State v. Keith,* 10th Dist. Franklin Nos. 08AP-28, 08AP-29, 2008-Ohio-6122, ¶ 13-14 (uncontroverted testimony that defendant stayed overnight for two or three nights before search established status as overnight guest). Therefore, as an overnight guest, Defendant had standing to challenge the legality of the warrantless search of the premises, and the trial court erred in overruling his motion to suppress for lack of standing.

{¶ 18} Defendant's first assignment of error is sustained.

{¶ 19} Defendant's second assignment of error:

"THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BECAUSE THE WARRANTLESS ENTRY INTO THE APARTMENT WAS WITHOUT ANY PROBABLE CAUSE, CONSENT OR EXIGENT CIRCUMSTANCES."

{¶ 20} After concluding that Defendant lacked standing to challenge the search of his girlfriend's apartment, the trial court did not address the legality either of the officers' entry into the apartment or the ensuing search. Having sustained Defendant's first assignment of error, we will remand the case to the trial court for further proceedings on those issues. *Peterson,* supra, at ¶16; *Keith,* supra, at ¶ 18.

{¶ 21} Defendant's second assignment of error is overruled. Defendant's conviction will be reversed and the case will be remanded to the trial court for further proceedings consistent with this opinion.

Fain, J., And Donovan, J., concur.

**Copies mailed to:**

**Michele D. Phipps, Esq.**
**Adelina E. Hamilton, Esq.**
**Hon. Gregory F. Singer**