**[Cite as *State v. Gary*, 2018-Ohio-3696.]**

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27829 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1903 |
| | : | |
| WESLEY GARY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 14th day of September, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Wesley Gary, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to drug trafficking and drug possession. In support of his appeal, Gary contends that the trial court erred in overruling his motion to suppress the drug evidence at issue. Specifically, Gary argues that the trial court erroneously determined that the plain view exception to the warrant requirement applied to make the warrantless seizure of the drugs lawful. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 7, 2017, Gary was indicted for one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2), a felony of the fifth degree, and one count of possession of marijuana in violation of R.C. 2925.11(A), a minor misdemeanor. The charges arose after a detective observed clear, plastic baggies of marijuana in Gary's half-open backpack while the backpack was lying on the floor of a Kwik-N-Kold drive-through in Dayton, Ohio. Upon entering a not guilty plea, Gary filed a motion to suppress, arguing, in relevant part, that the drug evidence was discovered as the result of an unreasonable search and seizure in violation of his Fourth Amendment rights.

{¶ 3} On August 29, 2017, the trial court held an evidentiary hearing on Gary's motion to suppress. During the hearing, the State presented the testimony of Detectives Ronald Gustwiller, Gregory Orick, and John Howard of the Dayton Police Department. The defense presented no witnesses, but submitted six photographs that were admitted into evidence. The following facts were elicited at the suppression hearing.

{¶ 4} On May 28, 2017, Detective Gustwiller was the primary detective for an undercover operation involving the underage sale of tobacco at a Kwik-N-Kold drive-through, located at 1201 Troy Street in Dayton. At 3:30 p.m., within three to five minutes of confirmation that an underage sale of tobacco had been completed, Gustwiller and the other detectives went to the Kwik-N-Kold. Upon their arrival, Detectives Gustwiller and Orick secured the exit of the business while Detectives Howard and Sopczak secured the entrance.

{¶ 5} Once the entrance and exit were secured, Gustwiller testified that he entered the business through the drive-through exit. From there, Gustwiller went into an open doorway that led to the cashier area of the business. Gustwiller testified that he went into the cashier area for purposes of making contact with the store clerk who had illegally sold the tobacco. Gustwiller questioned the clerk and informed him that he was being, as Gustwiller described it, "summons arrested."

{¶ 6} The photographs admitted into evidence establish that the cashier area contains cash registers, a sales counter, cigarettes, and other items for sale. The cashier area has two doorways, one that can be accessed from outside the building on its south side, and another that can be accessed inside the building from the drive-through area. Gustwiller entered the cashier area through the doorway inside the drive-through. That doorway leads to the space behind the sales counter where employees conduct transactions. The south-side doorway leads to the customer side of the sales counter.

{¶ 7} Gustwiller testified that as he entered the threshold of the cashier area, he noticed, in plain view, a half-open backpack lying on the floor. Gustwiller testified that the backpack was "dark blue in color. It was actually laying on its belly on top of the

straps, and the flap, you know the zipper comes over top, but the flap was actually flat back and I could actually see clear plastic baggies with what I believed to be marijuana inside those clear plastic baggies." Suppression Hearing Trans. (Aug. 29, 2017)("Trans."), p. 38-39. Gustwiller further testified that he had been a Dayton police officer for approximately eleven years and a detective with the narcotics bureau street crimes unit for the past six years. Based on his training and experience, Gustwiller testified that he immediately recognized the substance in the plastic baggies as marijuana.

{¶ 8} Continuing, Gustwiller testified that while he was questioning the store clerk, he observed Gary enter the cashier area and "[fold] the lip back over top of the baggies. He did not zip it closed; he just folded it back up." *Id.* at 40. Thereafter, Gustwiller observed Gary walk out of the cashier area. Upon seeing this, Gustwiller asked Detective Howard to detain Gary so that Gustwiller could speak with him.

{¶ 9} Howard testified that he saw Gary standing at the exit of the drive-through and asked him if he minded "holding it up for a minute so we can talk to you?" *Id.* at 7. According to Howard, Gary said, "yeah, sure." *Id.* Howard then told Gary that "Gustwiller would be with him here in a moment." *Id.* Howard then stood by the exit of the premises with Gary, who was standing 10 to 15 feet away.

{¶ 10} While Gustwiller was questioning the store clerk, Orick was conducting a protective sweep of the Kwik-N-Kold premises. Gustwiller testified that it was pre-established that there would be a protective sweep of the premises. Orick testified that the protective sweep was a "cursory search" for purposes of officer safety, which included searching for both people and evidence.

**{¶ 11}** While conducting the protective sweep, Orick entered the employee side of the cashier area where Gustwiller was located. Once Orick entered the cashier area, Gustwiller told Orick to retrieve the backpack, which was still lying on the floor. Orick testified that he took the backpack as directed and placed it on the hood of his car. Orick then searched the backpack and found multiple knotted up baggies of different sizes containing marijuana.

**{¶ 12}** After Gustwiller informed the store clerk that he had been "summons arrested" and that he would later receive paperwork from the court, Gustwiller exited the building to speak with Gary regarding the marijuana. Gustwiller testified that he administered Gary his *Miranda* warnings and that Gary agreed to speak with him. Thereafter, Gustwiller and Gary had a casual conversation, which Gustwiller described as follows:

> It was a very general conversation. Right off the get-go [Gary] said that somebody brought the backpack there because he was following—being followed by the police. I laughed because I thought that was a very interesting excuse for the backpack to get there, so I wanted him to tell me the story. In doing so, the general conversation led into he knew what was in the backpack, that there were quarter and nickel bags in there. He actually said that it looked like it was good stuff that was in the backpack. He freely admitted that he did sell weed, but he wasn't selling weed on this particular day, which I though was interesting, of course. * * * Throughout the conversation, at the end he actually said that he wasn't –he didn't want to go to jail. I informed him that I never told him he was going to jail.

Again, it was very cordial, and the conversation itself, seven to ten minutes tops. It was very quick. After it was over with, I thanked him for his time and his honesty, and then I actually informed him that he was going to be summons arrested, that I wasn't going to take him—physically take him to jail. I made sure he understood what I meant. He did. I told him that he would receive paperwork in the mail. * * *.

Trans. at p. 47-48.

{¶ 13} Following the suppression hearing, the trial court issued a written decision overruling Gary's motion to suppress on grounds that Gustwiller observed the marijuana in plain view. While the trial court found the protective sweep of the Kwik-N-Kold premises was unlawful, it held that the protective sweep was not the basis upon which Gustwiller entered the employee side of the cashier area. Rather, the trial court found Gustwiller was in that area for the lawful, reasonable purpose of questioning the store clerk and notifying him that he was being "summons arrested." As a result, the trial court held that the Fourth Amendment was not violated by Gustwiller arriving at the place from which the backpack and marijuana could be plainly viewed.

{¶ 14} In light of the trial court's decision, Gary pled no contest to the charges in the indictment. After accepting his plea, the trial court imposed community control sanctions not to exceed five years. Gary now appeals from his conviction raising a single assignment of error for review.

## Assignment of Error

{¶ 15} Gary's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 16} Under his assignment of error, Gary contends that the trial court erroneously determined the warrantless seizure of the drugs at issue was lawful pursuant to the plain view exception to the warrant requirement. According to Gary, the plain view exception did not apply because the employee side of the cashier area where Detective Gustwiller observed the drugs in question was not open to the public. Gary, therefore, claims Gustwiller was not lawfully positioned when he observed the drugs in plain view.

*Standard of Review*

{¶ 17} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.* quoting *Retherford* at 592.

*The Fourth Amendment and the Plain View Doctrine*

{¶ 18} "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *State v. Roberts*, 2d Dist.

Montgomery No. 23219, 2010-Ohio-300, ¶ 14, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 476, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

{¶ 19} "[T]he Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." (Citation omitted.) *New York v. Burger*, 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). The expectation of privacy in commercial property, however, "is different from, and indeed less than, a similar expectation in an individual's home." (Citation omitted.) *Id*. *Accord State v. Henderson*, 2d Dist. Montgomery No. 22062, 2008-Ohio-1160, ¶ 13. "This expectation [of privacy] is particularly attenuated in commercial property employed in 'closely regulated' industries." *Burger* at 699. "A few examples of such businesses are places serving alcohol, pharmacies, and horse racing." (Citation omitted.) *State v. Terlesky*, 7th Dist. Mahoning No. 05 MA 237, 2007-Ohio-3402, ¶ 23.

{¶ 20} " '[B]ecause the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.' " *State v. Young*, 2d Dist. Montgomery No. 24537, 2011-Ohio-4875, ¶ 14, quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). One such exception is the plain view doctrine. *State v. Pinson*, 2d Dist. Montgomery No. 20927, 2005-Ohio-4532, ¶ 25, citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985) and *Coolidge* at 465. Under the plain view doctrine, a warrantless seizure of incriminating evidence is permissible where "(1) the officers are

lawfully positioned in a place from which the object can be plainly viewed, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *State v. Goode*, 2d Dist. Montgomery No. 25175, 2013-Ohio-958, ¶ 26, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) and *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

**{¶ 21}** The plain view doctrine applies "only where the officer first made a lawful initial intrusion or otherwise was in a position where he could view the contraband." *State v. Claytor*, 85 Ohio App.3d 623, 628, 620 N.E.2d 906 (4th Dist.1993). In other words, "[t]he plain-view exception permits a law enforcement officer to seize clearly incriminating contraband only when it is discovered in a place where the officer has a right to be." (Citation omitted.) *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 20.

**{¶ 22}** This court has held that "[a] bar, where intoxicating beverages are sold, is a public place, and police officers are not required to have any special authority to enter therein." *State v. Bailey*, 2d Dist. Montgomery No. 16903, 1998 WL 453712, *3 (Aug. 7, 1998), citing *State v. Moody*, 30 Ohio App.3d 44, 506 N.E.2d 256 (1st Dist.1995). " 'The rationale is that a law enforcement officer is a member of the public and, just like any citizen, may accept a general public invitation to enter upon commercial premises which are open to the public.' " *State v. Howell*, 4th Dist. Ross No. 1679, 1991 WL 87289, *3 (Apr. 23, 1991), quoting *People v. Caserta*, 123 Ill. App.3d 608, 612, 463 N.E.2d 190 (1984). "Police officers with legitimate business may enter areas impliedly open to the public, and are permitted the same license to intrude as a reasonably respectful

citizen." (Citations omitted.) *U.S. v. Walters*, 529 F.Supp.2d 628, 638 (E.D. Texas 2007); *See also State v. Birdsall*, 6th Dist. Williams No. WM-09-016, 2010-Ohio-2382, ¶ 13.

{¶ 23} As noted in 1 LaFave, Search and Seizure (1987) 429, Section 2.4(b):

It is a fair generalization, however, that business and commercial premises are not as private as residential premises, and that consequently there are various police investigative procedures which may be directed at such premises without the police conduct constituting a Fourth Amendment search. *Katz v. United States* [389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),] teaches that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." This means "that as an ordinary matter law enforcement officials may accept a general public invitation to enter commercial premises for purposes not related to the trade conducted thereupon." On this basis, courts have consistently held that police, albeit motivated by an investigative purpose, conducted no search by merely entering such premises as a bus terminal, auto repair shop, salvage yard, used car lot, dock, real estate office, motel, pool hall, bar, restaurant, furniture store, or variety store. The "implied invitation for customers to come in," of course, extends only to those times when the premises are in fact "open to the public"; the mere fact that certain premises are open to the public at certain times does not justify entry by the police on other occasions.

{¶ 24} As previously noted, Gary contends the plain view doctrine does not apply

to his case because the employee side of the cashier area where Detective Gustwiller observed the marijuana in question was not open to the public. Gary cites *State v. Baker*, 112 N.J.Super. 351, 271 A.2d 435 (1970) for the proposition that the right of police officers to enter a public store "does not extend beyond the area to which the public is admitted[.]" *Id.* at 357-358.

{¶ 25} In *Baker*, detectives entered a barbershop with the purpose of investigating the illegal sale of alcohol. *Id.* at 353. The detectives, without a warrant, looked around the main room of the barbershop and then gradually went to the back of the building where they searched a women's room, a storage room, a wash room, and a large back room at the end of a corridor that contained a bar with alcohol for patrons. *Id.* at 354. All the doors to these rooms were open, but the large back room could not be seen from the main room of the barbershop. *Id.*

{¶ 26} As a result of discovering the bar, the detectives arrested the barbershop owner for illegally selling alcohol. *Id.* The detectives then searched the owner's person and found two marijuana cigarettes. *Id.* As a result, the owner was charged with possession of drugs. The owner moved to suppress the drug evidence on grounds that the detectives obtained the evidence during an unlawful, warrantless search. The trial court found otherwise and overruled the motion to suppress. *Id.* Thereafter, the barbershop owner was convicted of drug possession, and he appealed.

{¶ 27} On appeal, the Superior Court of New Jersey held that the warrantless search of the premises was illegal and that the drug evidence should have been suppressed. *Baker*, 112 N.J.Super. at 358, 271 A.2d 435. In so holding, the court explained that a police officer's right to enter a public store does not extend beyond the

area to which the public is admitted, "i.e., the store premises proper." (Citation omitted.) *Id.* Because the back room bar area at issue was not visible from the main room of the barbershop, and the incursion to the back room went beyond the barbershop, the trial court found the search was "plainly not justified on the theory of store premises open to the public." (Citation omitted.) *Id.*

**{¶ 28}** Gary likens the instant case to *Baker* because he claims the employee side of the cashier area where Gustwiller entered and saw the drugs was not open to the public. Therefore, Gary claims that Gustwiller was not lawfully positioned in a place from which the drugs could be plainly viewed. Gary does not challenge any other aspect of the plain view doctrine.

**{¶ 29}** The photographs admitted into evidence indicate that customer transactions occur in the cashier area at issue. The photographs show cash registers, items for sale, and a sales counter located in the cashier area. Detective Howard also testified that he had seen "foot traffic come and go" from the south-side entrance of the building, which leads to the customer side of the cashier area. Trans. at p. 10. Accordingly, the evidence indicates that the public enters the customer side of the cashier area using the south-side entrance.

**{¶ 30}** Gustwiller, however, entered the employee side of the cashier area using an entrance located in the drive-through. While testifying, Detective Orick agreed that the backpack containing the marijuana was located "on the floor behind the main counter desk area," which was not "accessible to customers in the store." Trans. at p. 14. The testimony and photographic evidence indicate that Gustwiller would have been able to see the backpack, but not the marijuana, had he used the customer entrance at the south

side of the building.   *See* Defendant's Exhibit F.

**{¶ 31}** Nevertheless, the photographic evidence indicates that, unlike the back room in *Baker*, the employee side of the cashier area is substantially open to public view from the business area of the store, i.e., the drive-through.   Unlike the barbershop in *Baker*, the Kwik-N-Kold drive-through is a large, open space where customers are able to view the doorway to the employee side of the cashier area, a doorway which was open when Gustwiller entered.[1]   The photographic evidence indicates that, when looking at the open doorway, it appears as if the employee side of the cashier area is just another part of the store and not a workspace.   *See* Defendant's Exhibit B.   The photographic evidence also indicates that there were no warning signs alerting the public not to enter the employee side of the cashier area.   *Id.*   While Gustwiller agreed that it was "fair to say" customers did not usually use the entrance he did, he testified that he was nevertheless uncertain as to the store's practices.   Trans. at p. 56.

**{¶ 32}** Although the evidence indicates that the doorway Gustwiller used to enter the employee side of the cashier area may not have been for the public, the area was nevertheless substantially open to public view and not hidden like the back room in *Baker*. In addition, unlike the barbershop in *Baker*, the Kwik-N-Kold premises had a reduced expectation of privacy as a commercial property in the highly regulated business of selling alcohol and tobacco products.

**{¶ 33}** Regardless, Gustwiller's presence in the employee side of the cashier area

---

[1] Detective Gustwiller testified that he would have been able to see the backpack in the cashier area before walking into the doorway if he were standing at an angle, thus indicating the doorway was open at the time he entered.   Trans. at p. 56.   The doorway is also shown to be open in the photographic evidence.   *See* Defendant's Exhibits A, B, C, and G.

was not unlawful because he entered the area for the legitimate purpose of notifying the store clerk that he was being "summons arrested" for selling tobacco products to a minor and for obtaining the store clerk's identification and contact information. *See State v. Moore*, 2d Dist. Montgomery No. 20198, 2004-Ohio-3783, ¶ 18 (holding the plain view doctrine applied to the warrantless seizure of drugs from a hotel room where the officers "were legitimately in the hotel room because they were effectuating arrests for misdemeanor offenses that had occurred in their presence, for which they did not need a warrant"). We stress that Gustwiller did not enter the employee side of the cashier area for purposes of conducting a warrantless search of the premises.

**{¶ 34}** Because Gustwiller had a legitimate purpose for entering the employee side of the cashier area and because that area was substantially open to public view and part of a premises that had a reduced expectation of privacy, we cannot say that Gustwiller's entry was unlawful so as to prevent the application of the plain view exception to the warrant requirement. Accordingly, the trial court did not err in applying the plain view exception and correctly overruled Gary's motion to suppress.

**{¶ 35}** Gary's sole assignment of error is overruled.

## Conclusion

**{¶ 36}** Having overruled Gary's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., concurring:

{¶ 37} A person challenging the legality of a search bears the burden of proving that he or she has a legitimate expectation of privacy in the place searched that society is prepared to recognize as reasonable. *See, e.g., Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (appellant lacked standing to bring Fourth Amendment challenge based on search of another person's home because he had no reasonable expectation of privacy therein); *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Williams*, 73 Ohio St.3d 153, 166, 652 N.E.2d 721 (1995). The individual must have a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable and justifiable. *Rakas* at 143; *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 14.

{¶ 38} Fourth Amendment protections may extend to businesses and commercial premises. *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (fire department was required to obtain a warrant to enter and inspect locked commercial warehouse). In some circumstances, employees may have a reasonable expectation of privacy in their workspace and, thus, standing to assert a Fourth Amendment violation. *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (addressing whether public employee had reasonable expectation of privacy in his office, desk, and file cabinets at his work location); *Mancusi v. DeForte,* 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (union official had reasonable expectation of privacy in office that he shared with other officials). *See also State v. Wallace*, 2012-Ohio-6270, 986 N.E.2d 498, ¶ 25 (7th Dist.). "An expectation of privacy in commercial premises,

however, is different from, and indeed less than, a similar expectation in an individual's home." *Burger*, 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601, quoted by *Carter* at 90. "Whether an employee had a reasonable expectation of privacy in order to have standing to object to a search of his or her workplace is decided on a case by case basis." *State v. Wallace*, 2012-Ohio-6270, 986 N.E.2d 498, ¶ 25 (7th Dist.), citing *O'Connor*, 480 U.S. at 718.

**{¶ 39}** Here, the officers entered an employee-only area of the drive-through to serve a "summons arrest" for the sale of alcohol to a minor. The record reflects that the area where the backpack was located was an area common to all employees, as opposed to, for example, a private office or an employee's locker. Although the backpack itself was not visible from the public area of the store, much of the employee area at issue was. There is no indication that Gary had a subjective expectation of privacy in the employee area, and the record does not support a conclusion that any such subjective expectation would have been reasonable.

**{¶ 40}** Accordingly, I concur in the affirmance of the trial court's judgment.

Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Gary C. Schaengold
Hon. Dennis J. Langer